**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**LAURA CATHERINE BOGGS,**

          **Plaintiff,**

**v.**

       **CIVIL ACTION NO.: 3:21-CV-94
(JUDGE GROH)**

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of Social Security,**

          **Defendant.**

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

This case arises from the denial of Plaintiff Laura Catherine Boggs's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of Defendant Andrew Saul ("Commissioner"), Commissioner of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion for Summary Judgment [ECF No. 17] by which she requests that the ALJ's decision be set aside, be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 22] be **GRANTED**.

---

[1] Kilolo Kijakazi may be automatically substituted in place of former commissioner Andrew M. Saul pursuant to Fed. R. Civ. P. 25(d).

## II.    <u>PROCEDURAL HISTORY</u>

On April 17, 2019, Plaintiff prospectively filed her application under the Social Security Act for a period of disability and DIB, alleging disability that began on April 1, 2019. (R. 35). This claim was initially denied on July 25, 2019 (R. 123) and denied again upon reconsideration on December 12, 2019. (R. 130). On March 27, 2020, Plaintiff filed a written request for a hearing (R. 133), which was held before ALJ William Stanley on November 12, 2020, in Morgantown, West Virginia. (R. 54). Plaintiff, represented by counsel Brian Bailey, appeared via teleconference and testified. Timothy Mahler, an impartial vocational expert ("VE"), also testified at the hearing. <u>Id</u>. On December 8, 2020, the ALJ issued an unfavorable decision to Plaintiff, finding that she was not disabled within the meaning of the Social Security Act. (R. 32).

Plaintiff filed a request for review of hearing decision dated January 19, 2021. (R. 216). Subsequently, the Appeals Council issued a Notice denying Plaintiff's request for review. (R. 1). Plaintiff filed her Complaint with this Court on June 18, 2021. [ECF No. 1]. The Commissioner filed the Answer and Administrative Record on September 2, 2021. [ECF Nos. 12, 13]. Plaintiff filed a Motion for Summary Judgment and brief in support, thereof, on November 3, 2021. [ECF No. 17, 17-1]. Defendant filed a Motion for Summary Judgment and memorandum in support, thereof, on January 17, 2022. [ECF No. 22]. Plaintiff filed a reply in support of her summary judgment motion on January 24, 2022. [ECF No. 23]. On April 19, 2022, Defendant provided a Notice of Supplemental Authority. [ECF No. 29]. After the matter was fully briefed, the undersigned conducted a hearing on April 27, 2022 to receive argument from counsel.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of

Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

## III.   <u>BACKGROUND</u>

### A.  Personal History

Plaintiff was born on March 6, 1961 and was 58 years old at the time she made her application for DIB. (R. 63). She is approximately 4'11" tall and weighs 158 pounds. (R. 64). She completed high school. (R. 65). Plaintiff is married and shares a home with her husband; no one else lives in the home with them. (R. 64). Plaintiff has two adult children who live independently from her. <u>Id</u>. At the time of the hearing before the ALJ, Plaintiff had income from a part-time job at which she worked two days per week, for approximately five to six hours per day. (R. 65-66). With this employer, which is a primary care clinic, Plaintiff earlier had worked as a certified nursing assistant ("CNA"). (R. 69-71). At the time of the hearing before the ALJ, Plaintiff had taken a lighter-duty position as a receptionist with this same employer, owing to her physical limitations. (R. 70-71). Plaintiff started work at the primary care clinic in 2016. (R. 70.)

Prior to her work at the primary care clinic, Plaintiff worked from 2012 to 2016 performing hospice care. (R. 73-74). Prior to her hospice care work, Plaintiff worked for approximately seven months in 2012 performing private home healthcare work. (R. 77). Prior to her home healthcare work, Plaintiff worked at Braxton Memorial Hospital from 2007 to 2012 as a CNA. (R. 74-75). Prior to her work at Braxton Memorial Hospital, Plaintiff was a mail carrier for 14 years, during which she drove a vehicle on a rural route. (R. 75-77). Plaintiff alleges that she is limited in her ability to work due to rheumatoid arthritis, depression, degenerative osteoarthritis of the wrist, obesity, trigger thumb, obesity, and generalized anxiety disorder. (R. 63).

**B. Medical History**

In accordance with the Court's Order Directing Filing of Briefs [ECF No. 14], the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. Accordingly, the undersigned relies upon those stipulated facts throughout this report and recommendation. See Pl's Brief Supp. Mot. Summ. J., ECF No. 17-1, at 6-7; Def.'s Brief Supp. Mot. Summ. J., ECF No. 22, at 1-4.

## IV.   THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

4

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4); 416.920. If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. Id.

## V.   ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that, since April 1, 2019, the alleged onset date, Plaintiff had not definitively engaged in any substantial gainful activity. (R. 37).[2] At step two, the ALJ found that Plaintiff suffers from the following severe impairments: seropositive rheumatoid arthritis; degenerative disc disease of the lumbar spine; bilateral rotator cuff syndrome; and obesity. (R. 38). At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. (R. 39). At step four, the ALJ determined that Plaintiff's RFC as follows:

"to perform sedentary work as defined in 20 CFR 404.1567(a) except: can perform stairs and ramps occasionally; no crawling or climbing ropes, ladders and scaffolds; can balance, reach, handle and finger frequently; can stoop, kneel, and crouch occasionally; should avoid concentrated exposure to cold, vibration, and hazards such as heavy, dangerous machinery and unprotected heights; and is afforded an opportunity to alternate sitting or standing positions for two minutes at one hour intervals without leaving the work station and without going off task."

---

[2] At step one, the ALJ reviewed how Plaintiff had some subsidized earnings and noted how it raised some question as to whether there was substantial gainful activity after the alleged onset date of April 1, 2019. (R. 37-38). The ALJ nonetheless undertook the sequential evaluation to examine Plaintiff's disability status for the entire period in question. In so doing, the ALJ reserved the question about whether Plaintiff may have been engaged in substantial gainful activity after April 1, 2019, stating that he would revisit it if Plaintiff would be found to be disabled as of any date after April 1, 2019. (R. 38).

(R. 41). Finally, the ALJ determined that Plaintiff has past relevant work as an admissions clerk and is capable of performing that work. (R. 46). Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. (R. 47).

## VI.   <u>DISCUSSION</u>

### A.  Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." <u>Id.</u> (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005) (quoting <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996)).

**B.  Contention of the Parties**

Plaintiff contends that the ALJ's decision is unsupported by substantial evidence. [ECF No. 17-1]. Plaintiff first argues that the ALJ erred in: (1) discounting the opinion of treating physician Dr. Christina Gillenwater that Plaintiff's symptoms preclude fulltime work; (2) discounting the opinion of physical therapist Kevin Boring that Plaintiff would have difficulty walking and standing more than two hours per day and that Plaintiff would have difficulty remaining seated for more than ten minutes without changing positions; and (3) failing to give Plaintiff's subjective complaints of pain due regard. Plaintiff also argues that there are two constitutional defects here: (1) that Defendant acted unconstitutionally in failing to evaluate Plaintiff's claim under the "treating physician rule," and (2) that, because of a "separation of powers" issue by which the Act limits presidential authority to remove the Commissioner of the agency Defendant, the ALJ here did not have constitutional authority to act on Plaintiff's claim.

Defendant argues that the standard of review here allows the ALJ's decision to stand. Defendant points out that Plaintiff merely having a different view of the evidence is not sufficient to disturb the ALJ's findings here under such a deferential standard of review. To this end, Defendant specifies how the ALJ found that the opinions of Dr. Gillenwater and Mr. Boring conflict with other evidence in the record about Plaintiff's engagement in daily activities without difficulty. As for Plaintiff's subjective complaints of pain, Defendant argues, the ALJ found that Plaintiff's testimony and arguments are inconsistent with objective facts set forth in the record otherwise, and it is not for the Court to re-weigh the evidence. Finally, as to the constitutional issues, Defendant argues that its regulations which eliminated the treating physician rule were validly promulgated and thus govern the Court's analysis here. Defendant also argues that the separation of powers issue does not require a re-hearing on Plaintiff's claim because Plaintiff

7

cannot show a nexus between restriction on the removal of the Commissioner of Social Security and denial of her claim, and because of other prudential considerations.

### C. Analysis of the Administrative Law Judge's Decision

As is frequently the case in the review of these matters, the main substantive issue is whether the ALJ's review of the medical records is sufficient enough to enjoy deference under the "substantial evidence," standard, or whether the ALJ's review was so deficient as to merit remand. In particular, the issue is narrowed to the review given and weight accorded to the reports of two medical providers who treated Plaintiff: (1) Dr. Christina Gillenwater, M.D., a primary care physician, and (2) Mr. Kevin Boring, M.P.T., a physical therapist. Here, the undersigned finds that substantial evidence supports the ALJ's thorough review, and as such the decision below is entitled to deference.

Under the pertinent regulations, the opinion of a claimant's treating medical care provider no longer is given controlling weight.[3] In fact, ALJs are not to give specific evidentiary weight to any kind of opinion given by a medical professional. "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, "The factors of <u>supportability</u> . . . and <u>consistency</u> . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

---

[3] As discussed below, Plaintiff makes constitutional arguments about how the "treating physician rule," under which the opinion of a claimant's medical provider is given certain weight, should govern the analysis here, even though it has been abrogated in the agency's regulations. However, as to this portion of the argument, Plaintiff argues that, even in the absence of the treating physician rule, under the agency's current regulations, the ALJ improperly evaluated the persuasiveness of the opinions of Dr. Gillenwater and Mr. Boring.

Here, Dr. Gillenwater provided a letter explaining how Plaintiff's rheumatoid arthritis affects her daily life and her employment. (R. 912). Explaining Plaintiff's pain, fatigue, and depression, Dr. Gillenwater noted that Plaintiff has decreased her work to part-time, and that "her symptoms are limiting her ability to do her current job and any other job that would require extensive sitting, standing, or constant use of her hands." (R. 912). Dr. Gillenwater stated that she is a family physician, not a rheumatologist. (R. 912). Yet, Dr. Gillenwater explained that rheumatologists had prescribed "strong medications to combat the joint swelling, stiffness, and pain," but that Plaintiff's symptoms nonetheless persist. (R. 912).

Mr. Boring performed a functional capacity evaluation and provided written summary of the same. (R. 913-916). Specifically, Mr. Boring concluded that Plaintiff's "overall degree of impairment to be moderately severe to severe or overall at least to a 50% reduction or more [sic], in all planes of movement." (R. 916). Mr. Boring further concluded:

> She likely would experience difficulty with extensive walking and standing much over two (2) hours in a day. She would also have difficulty remaining seated for periods of time over ten (10) minutes without changing positions . . . Her wrist, hand, and finger stiffness and pain would counter indicate any use of her hands/fingers at or only on an occasional basis. . .She would have a poor capacity for dexterity for regularly handling small items such as pencils, pens, papers, paperclips and files consistent with office work or clerking.

(R. 916).

The ALJ concluded that the opinions of neither Dr. Gillenwater nor Mr. Boring were persuasive. As to Dr. Gillenwater's opinion, the ALJ rightly pointed out that it contains vagueness in its conclusion that Plaintiff cannot engage in "extensive" sitting/standing/hand use. There is no specificity as to what Dr. Gillenwater means by "extensive." There is nothing to know whether this is intended to be a temporal limitation or some other type of limitation. And if it is intended to be a temporal limitation, for instance, there is no assignment of a time limit for Plaintiff engaging

in those activities. Further, the ALJ noted that Dr. Gillenwater's opinions are merely conclusory in nature, driven by Plaintiff's subjective descriptions of her health, and do not appear to be informed by particular, objective examinations or imaging.

As for Mr. Boring's conclusions, the ALJ similarly discounted them. The ALJ correctly noted that Mr. Boring's conclusions about Plaintiff experiencing "stiffness and pain" are from his observation of her one time, during the functional capacity evaluation. The conclusion here does not seem to be drawn from other dealings with Plaintiff or a review of any other evidence. The ALJ did not question that Plaintiff exhibited stiffness at the time of Mr. Boring's examination, but the ALJ did rightly note that the conclusions about the extent and frequency of Plaintiff's stiffness is not very well explained to support Mr. Boring's recommended limitations in Plaintiff's activity. There are no findings outside of Mr. Boring's subjective, apparent one-time examination to support the conclusions about Plaintiff's limitations in a work environment. Moreover, it does not seem that Mr. Boring had a lengthy relationship with Plaintiff as a treatment provider, and so the ALJ could rightly factor that into how persuasive she found Mr. Boring's conclusions to be. 20 C.F.R. § 404.1520c(c)(3) (emphasizing importance of treating relationship's length and frequency in determining the persuasiveness of a provider's opinion).

In contrast to the conclusions drawn by Dr. Gillenwater and Mr. Boring, the ALJ reviewed Plaintiff's treatment records, and especially, records from examination by Plaintiff's rheumatologist. In so doing, the ALJ found the conclusions by Dr. Gillenwater and Mr. Boring to be inconsistent with the record otherwise. After all, under the pertinent regulations, supportability and consistency of a medical opinion is paramount in determining its persuasiveness under the governing regulations. 20 C.F.R. § 404.1520c(b)(2). Also, the ALJ appears to have, per the regulations, found the conclusions from the rheumatology examinations more persuasive. 20

C.F.R. § 404.1520c(c)(4) (". . . opinion . . . of a medical source who has received advanced education and training . . . may be more persuasive about medical issues related to . . . area of specialty than the medical opinion . . . of a medical source who is not a specialist. . . .").

To this end, the ALJ explained how, for instance, Plaintiff reported to a rheumatologist in March of 2019 that she was experiencing significantly reduced joint pain upon taking injections of medicine, and that her stiffness lasted less than 30 minutes in a day. (R. 43, 411). Moreover, at this visit, Plaintiff did not report having fatigue or swelling of her joints. (R. 43, 411). The ALJ also noted that during an appointment with her rheumatologist in July 2019, Plaintiff reported lower back, hand, and ankle pain, but no joint pain, and reported stiffness lasting one hour per day. (R. 43, 603). She had 5/5 hand grasp, a full range of motion with her hips, and no synovitis (inflammation of joint tissue) in her knees, ankles, or MTP joints (joints connecting toes to feet). (R. 43, 605-606). Plaintiff attributed any issues with range of motion that day to recent performance of household chores. (R. 43, 606). The rheumatologist instructed Plaintiff to manage pain with common pain relievers and concluded that the rheumatoid arthritis was "under good control." (R. 43, 606, 664).

Plaintiff's later appointments with the rheumatology practice yielded similar information and conclusions. For instance, at a June 2020 visit, Plaintiff reported some issues with pain and the like, but that she experienced relief by taking Ibuprofen and was advised to manage discomfort with a simple heating pad. (R. 44, 733).  And then, in October 2020, Plaintiff was experiencing no joint swelling, and no synovitis or flaring. (R. 44, 900, 909). Although she did report some forms of pain and discomfort, the "joint pain is not related to underlying flare from rheumatoid." (R. 909). Plaintiff was to continue her same treatment regimen, with physical therapy advised for joint

pain. (R. 44, 901, 909). The provider observed that "Overall patient has done well on her current regimen." (R. 909).

In further support of her conclusion, the ALJ summarized how Plaintiff engages in a range of daily activities (e.g. keyboarding in current employment, sewing/crafting, yardwork, driving). (R. 46). While the undersigned appreciates that there is a difference between (a) undertaking daily activities as one, who may be in consistent pain, is able and (b) engaging in full-time work, the ALJ detailed how the record shows Plaintiff to be active in daily life. For instance, the notes from the rheumatology clinic from a visit in March 2019 indicate that "Overall she has no complaints and is able to perform ADLs [activities of daily living] without difficulty." (R. 411). The record memorializes such conclusions otherwise from consultations with the rheumatology clinic on other dates. (R. 567, 660, 729, 744-45, 751).

The undersigned agrees with the Commissioner that Plaintiff's differences with the ALJ are about how Plaintiff would weigh the evidence differently from the ALJ, which is insufficient to disturb the ALJ's ruling. Given the ALJ's detailed review of the record, and weighing of the evidence in the fashion which the regulations would direct, his conclusion is supported by substantial evidence that "the claimant's allegations as to the intensity and limiting effects of her physical impairments are not fully consistent with the medical evidence of record and do not preclude the claimant from performing the limited range of work activity prescribed in the [RFC]." (R. 44). Accordingly, the undersigned finds that the ALJ's substantive findings should stand.

**D.  Analysis of Constitutional Issues[4]**

**1. The Plaintiff's claim should not be reassessed under the old treating physician rule, because the agency's rulemaking that eliminated the rule was a valid exercise of its rulemaking authority, and nothing in the law compels assessment under the treating physician rule otherwise.**

Under prior provision in the regulatory scheme governing the benefits program administered by Defendant, the opinions of providers rendering treatment to claimants were to be afforded deference if certain conditions were met.[5] Under this "treating physician rule," a provider's opinion was given "controlling weight" . . . on the nature and severity of the claimant's impairment if that opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence" in the record. Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 106 (4th Cir. 2020) (quoting 20 C.F.R. § 404.1527(c)(2)).[6] "Upon deciding not to give *controlling* weight to a treating physician's opinion, ALJs must determine the appropriate weight to be accorded to the opinion by considering "all of . . . the factors" listed in the regulation, which include the length of the treatment relationship, consistency of the opinion with the record, and the physician's specialization." Id. (quoting 20 C.F.R. § 404.1527(c)(2)-(6)) (emphasis in original). The Arakas court further explained that "the treating physician rule is a robust one: '[T]he opinion of a claimant's treating physician [must be

---

[4] In oral argument before the undersigned, Plaintiff's counsel was asked whether he was aware of any caselaw in which a court had agreed with his constitutional arguments herein. Counsel was candid in acknowledging that he was not aware of any, which the undersigned appreciates. Counsel indicated that he was including these arguments in his briefs so as to preserve them for appeal, which the undersigned also appreciates.

[5] Claims, such as the one in the instant matter, filed on or after March 27, 2017 are not reviewed under the treating physician rule. Rather, they are reviewed under the rubric set forth at 20 C.F.R. § 404.1520c. For claims filed prior to March 27, 2017, they continue to be governed by the treating physician rule, which still is codified in the agency's regulations for application to such older claims. 20 C.F.R. § 404.1527.

[6] Notably, the revised regulations do not eliminate consideration of treating sources altogether. The revisions merely speak to the weight of the evidence to be given to treating sources.

given great weight and may be disregarded only if there is persuasive contradictory evidence.'" Id. at 107 (quoting Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)).

Plaintiff filed her claim on April 17, 2019, after the agency had modified the treating physician rule. Nonetheless, Plaintiff argues that her claim must be reviewed under the rubric of the old treating physician rule because the Fourth Circuit recognized the treating physician rule in caselaw. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986); Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). Specifically, Plaintiff argues that because Fourth Circuit caselaw recognized the treating physician rule even before the agency codified the rule in its regulations in 1991, that caselaw is mandatory precedent to follow, even though the agency has since abrogated the rule in its regulations. Moreover, according to Plaintiff, because Defendant is an agency that is part of the executive branch, it cannot alter the Fourth Circuit caselaw recognizing the treating physician rule. Of course, such caselaw was established by the judiciary, another branch of government. Thus, Plaintiff's argument goes, failure to recognize the treating physician rule here is a violation of the separation of powers clause set forth in Article III, Section 1 of the United States Constitution. Plaintiff questions whether Defendant properly engaged in rulemaking to eliminate the treating physician rule.

### a. The agency rulemaking which eliminated the treating physician rule is not defective.

The undersigned finds that Plaintiff's argument is unavailing here. First, as Defendant notes, the Act itself does not require the administrative agency to promulgate the treating physician rule specifically. Plaintiff cites no caselaw (nor is the undersigned aware of any) finding that the Act requires Defendant to promulgate the treating physician rule. Further, the Act confers on Defendant's rather broad authority to promulgate regulations to implement the Social Security benefits scheme. After all, under the Act:

> The Commissioner of Social Security shall have full power and authority to make rules and regulations and to establish procedures . . . which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

42 U.S.C. § 405(a). And of course, courts have long validated congressional conferrals of power for agencies to promulgate regulations. Whitman v. Am. Trucking Associations, 531 U.S. 457, 474-475 (2001) (cataloging an array of delegations of rulemaking authority to administrative agencies which have been upheld by the courts).

While the Act contains a requirement that Defendant make efforts to obtain and account for pertinent evidence from a claimant's treating healthcare provider(s), 42 U.S.C. § 423(d)(5)(B), the Act does not direct how Defendant should weigh or consider such evidence. Therefore, the Act provides latitude for Defendant, in promulgating regulations, to adopt (or not adopt) a treating physician rule. Under seminal caselaw concerning administrative law:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–843 (1984) (footnotes omitted). Here, the Act does not directly address "the precise question at issue" but instead "is silent or ambiguous with respect to the" treating physician rule. In that instance, "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844.

15

With respect to Defendant's 2017 rulemaking which eliminated the treating physician rule, Defendant's actions were not arbitrary or capricious. As Defendant convincingly establishes in its brief, the agency engaged in a painstaking rulemaking process in which it ultimately abrogated the treating physician rule. Undergirding that rulemaking process was a study and report by the Administrative Conference of the United States ("ACUS"), which is an independent federal agency tasked with reviewing federal agency procedures and providing expert advice concerning the same. ACUS reviewed how Defendant adjudicates disability claims, and focused especially on the treating physician rule. Based on fundamental shifts in health care services (e.g. declining number of long-term doctor-patient relationships, the rise of managed care systems), inconsistent results from ALJ reliance on treating physician evidence, and other factors, ACUS recommended that the treating physician rule be abandoned.[7] Defendant emphasized the ACUS report in developing proposed rulemaking to eliminate the treating physician rule. Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62560, 62561 (Sept. 9, 2016). In its final regulation, Defendant promulgated detailed requirements for the evaluation of medical evidence to determine whether a claimant should be awarded benefits. 20 C.F.R. § 404.1520c. In so doing, Defendant did not preclude the introduction of treating source evidence altogether, but rather simply provided that such evidence is not necessarily to be given more weight than other evidence.

---

[7] Administrative Conference of the United States, SSA Disability Benefits Program, Assessing the Efficacy of the Treating Physician Rule (April 13, 2013), available at https://www.acus.gov/sites/default/files/documents/Treating_Physician_Rule_Final_Report_4-3-2013_0.pdf.

The undersigned thus does not find that Defendant was arbitrary and capricious in elimination of the treating physician rule.[8]

### b. The treating physician rule is no longer applicable even though it was recognized in caselaw prior to Defendant first adopting the rule in its regulations.

Perhaps more to the point, Plaintiff argues that, notwithstanding Defendant's elimination of the treating physician rule in its regulations, the treating physician rule still stands under the principle of *stare decisis*. Plaintiff stresses that the Fourth Circuit recognized the treating physician rule independently of (and prior to) Defendant's promulgation of the rule in Defendant's implementing regulations. Thus, according to Plaintiff, her claim must be analyzed under the treating physician rule. However, Plaintiff's argument here fails, too.

The Fourth Circuit's recognition of the treating physician rule in caselaw, even though it predated Defendant's adoption of the rule in Defendant's regulations, nonetheless arose in the course of the judiciary's review of the Act itself. In other words, while it is an obvious point, the judicial recognition of the treating physician rule did not arise in a context other than a review of the Act. This is key because the Act unquestionably confers on Defendant the latitude – indeed, the responsibility – to develop regulations implementing the Act. As such, Defendant's valid rulemaking governs the benefits scheme at issue; conflicting prior caselaw does not.

As Defendant rightly argues, where an administrative agency promulgates a regulation in conflict with prior caselaw, the later-developed regulation governs if the statute governing the issue is ambiguous. If there is such ambiguity, then there is deference to the agency and its construction of the ambiguous statute. As the Supreme Court has plainly set forth, "A court's prior

---

[8] Notably, in the ERISA context, a widely-cited Supreme Court decision concluded that the question of whether a treating physician rule should be implemented should be left to Congress or the pertinent administrative agency. <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 832 (2003).

judicial construction of a statute trumps an agency construction otherwise entitled to <u>Chevron</u> deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." <u>Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.</u>, 545 U.S. 967, 982 (2005).

The undersigned is unaware of any Fourth Circuit caselaw finding that the Act is unambiguous on this point. In the canon of Fourth Circuit cases on the issue, there is no specific finding that the Act is unambiguous or requires adoption of the treating physician rule. <u>Underwood v. Ribicoff</u>, 298 F.3d 850 (4th Cir. 1962); <u>Vitek v. Finch</u>, 438 F.2d 1157 (4th Cir. 1971); <u>Oppenheim v. Finch</u>, 495 F.3d 396 (4th Cir. 1974); <u>Mitchell v. Schweiker</u>, 699 F.2d 185 (4th Cir. 1983); <u>Coffman</u>, 829 F.2d 514; <u>Foster</u>, 780 F.2d 1125; <u>Mitchell</u>, 699 F.2d 185. The undersigned is unaware of authority otherwise finding that the Act is unambiguous on this point and/or straightforwardly requires Defendant to adopt the treating physician rule. As such, all indications are that Defendant's promulgation of a regulation abandoning the treating physician rule, where the promulgation post-dates Fourth Circuit caselaw recognizing the rule, governs, per the clear directive in <u>Brand X</u>.

Accordingly, Plaintiff's argument fails on this point.

**2. Plaintiff is not entitled to a re-hearing of her claim based upon the Act's limitation for removal of the Commissioner of the agency Defendant.**

Plaintiff argues – and Defendant does not dispute – that the provision under the Act for appointment of the Commissioner of the agency is unconstitutional to the extent which it hinders the President's ability to remove the Commissioner from their position without cause. Under the Act:

> The Commissioner shall be appointed for a term of 6 years, except that the initial term of office for Commissioner shall terminate January 19, 2001. In any case in which a successor does not take office at the end of a Commissioner's term of office,

18

such Commissioner may continue in office until the entry upon office of such a successor. A Commissioner appointed to a term of office after the commencement of such term may serve under such appointment only for the remainder of such term. <u>An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office</u>.

42 U.S.C. § 902(a)(3) (emphasis added). This portion of the Act is in tension with Article II of the United States Constitution, which provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. As a practical matter, the Constitutional structure is that such lesser officers aid the President in discharging executive duties. <u>Seila L. LLC v. Consumer Fin. Prot. Bureau</u>, 140 S. Ct. 2183, 2197 (2020). A statute which limits the President's ability to remove a lesser executive officer such as the Commissioner thus diminishes that officer's accountability to the President, in violation of the separation of powers requirement. <u>Id.</u>; <u>See also</u> <u>Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot.</u>, 2021 WL 2981542, at *3 (O.L.C. July 8, 2021) ("To meet his 'take Care' duty, the President must have some ability to remove executive officers who the President believes are failing to satisfy the constitutional command of faithful execution of the laws.")

First, despite this constitutional defect, the undersigned finds that Defendant is correct that this is not a basis for setting aside the ALJ's decision. As Defendant convincingly notes, the ALJ in this matter was not appointed by a Commissioner who is subject to the Act's removal restriction set forth at 42 U.S.C. § 902(a)(3). Rather, the ALJ herein was appointed by an <u>Acting</u> Commissioner. An Acting Commissioner is removable at will, at any time, as the Act does not limit the ability to remove an Acting Commissioner as it does with a Commissioner. Thus, the portion of the Act at issue did not bear on the appointment of the ALJ herein. <u>See</u> <u>Collins v. Yellen</u>, 141 S. Ct. 1761, 1782 (2021) (concluding that an agency's Acting Director serves the President at-will, unlike that same agency's Director being removable "for cause" per the agency's enabling

legislation, thus undercutting challengers' argument that Acting Director's actions should be set aside.) Therefore, Plaintiff cannot impute to the ALJ here the same problematic limitations that perhaps she could if the ALJ were appointed by a Commissioner who is subject to the removal restrictions.

Secondly, and perhaps more to the point, Plaintiff cannot demonstrate how she was actually harmed in this regard. Even if the Commissioner (or Acting Commissioner, for that matter) is unduly protected from removal, it is unclear what compensable harm Plaintiff here suffered. There is no allegation here that the Commissioner/Acting Commissioner was improperly appointed, or that such officer exercised power that they did not have. Just because there may be an unconstitutional limit on removal of an agency head, that does not necessarily mean that the officer, otherwise duly appointed, exercised power that they did not possess, or otherwise undertook voidable actions. See Collins, 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [agency] . . . as void.") (emphasis in original).

Plaintiff has not made any showing that having a Commissioner who is subject to a proper removal provision would have yielded a different result in her claim here, or any other claims, for that matter. Nor has Plaintiff made any showing that the President attempted to remove the Acting Commissioner (or Commissioner), let alone a showing that the President attempted to do so and was thwarted by the Act's limit on removal. Put another way, Plaintiff demonstrates no causal connection between the Act's limit on removal of the Commissioner and the adverse result before

the ALJ and Appeals Council below. The Supreme Court has explained that an issue such as the

one Plaintiff raises here does not necessitate reversal of agency action absent some harm.

> What we said about standing in <u>Seila Law</u> should not be misunderstood as a holding
> on a party's entitlement to relief based on an unconstitutional removal restriction.
> We held that a plaintiff that challenges a statutory restriction on the President's
> power to remove an executive officer can establish standing by showing that it was
> harmed by an action that was taken by such an officer and that the plaintiff alleges
> was void. But that holding on standing does not mean that actions taken by such an
> officer are void *ab initio* and must be undone.

<u>Collins</u> 141 S. Ct. at 1788, n. 24 (citation omitted).

### 3. Several doctrines and prudential considerations weigh in favor of denying Plaintiff's re-hearing request.

As a final matter, the Commissioner raises four doctrines to underscore that Plaintiff's

constitutional arguments do not merit relief here. After careful review, the undersigned is in

agreement with the Commissioner, and memorializes those arguments here in summary fashion.

First, the harmless error doctrine applies to prevent Plaintiff's constitutional challenge.

Courts have long recognized that certain defects in the law nonetheless yield harmless results

which do not necessitate drastic court action. <u>See</u> <u>Sherman v. Smith</u>, 89 F.3d 1134, 1137 (4th Cir.

1996). Here, Plaintiff makes no showing that the Act's removal provision was fundamentally

flawed such that it somehow informed or played a role in the ALJ's decision against her. Thus,

Plaintiff's arguments fail.

Second, the de facto officer doctrine applies to preclude Plaintiff's constitutional challenge.

This longstanding doctrine applies to ratify the actions of government officers whose positions

may be technically defective but whose actions assure that the government operates effectively.

<u>See</u> <u>Rockingham County v. Luten Bridge Co.</u>, 35 F.2d 301, 306-307 (4th Cir. 1929). Here, the

doctrine is applicable because otherwise, Plaintiff's argument, if accepted, would upend thousands

of Social Security benefits cases, to no practical end. Plus, application of the doctrine to save

government action is more in question where an official's very <u>appointment</u> is in question. <u>Id.</u>; <u>see</u> <u>also</u> <u>Ryder v. U.S.</u>, 515 U.S. 177, 182-83 (1995). Here, there is no question about the Commissioner's <u>appointment</u>, but rather about the Commissioner's <u>removal</u>. This militates even more in favor of upholding agency action here. Plaintiff does not articulate any reason to throw such a massive administrative operation into chaos for the sake of advancing these constitutional arguments. Thus, on application of the de facto officer doctrine, Plaintiff's constitutional arguments fail.

Third, the rule of necessity applies to disqualify Plaintiff's constitutional challenge. Under this doctrine, a judge must preside over a matter where that adjudicator and all others in the same position have the same defect in that position. <u>See</u> <u>U.S. v. Will</u>, 449 U.S. 200, 213-214 (1980). Here, if the ALJ deciding Plaintiff's case were to be disqualified because of Plaintiff's constitutional arguments, then all other adjudicators would be similarly disqualified. This would leave Plaintiff (and a large number of other claimants) without a forum to adjudicate their claims. As such, Plaintiff's constitutional arguments fail because of the rule of necessity.

Fourth and finally, prudential considerations bar Plaintiff's constitutional arguments. As Defendant correctly points out, if Plaintiff prevails with her constitutional arguments, that would lead to repetitious re-hearings for those whose cases already have been adjudicated by an ALJ. This of course would stretch agency resources and greatly delay the hearing of cases for claimants who have not yet had such review. And there is no reasonable argument that a re-hearing in Plaintiff's matter, simply because of her constitutional arguments, would result in any more effective or different outcome. The remand which Plaintiff seeks would be senseless.

**4. Conclusion as to constitutional issues.**

Accordingly, because Plaintiff cannot demonstrate harm resulting from the removal Act's removal provision for the Commissioner, and because of other prudential considerations, her challenge fails in this regard.

## VII.    RECOMMENDATION

For the reasons herein stated, the undersigned **FINDS** that the Commissioner's decision denying Plaintiff's claim for DIB does not contain legal error and is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 14] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 17] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party shall have fourteen (14) days (filing of objections) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 24th day of May, 2022.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE